IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **NIKOLAOS ZAHAROPOULOS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:22-CV-348 (MTT) |
| | ) |
| **NASIR TAYLOR,** *et. al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Dominque Bowers, a Northrop Grumman employee and member of Northrop Grumman's Employee Benefit Plan, was murdered, allegedly by her minor son, J.C. Docs. 1 ¶ 37; 6 at 13; 16-1 at 389. J.C. has renounced any claim to the death benefits provided by the Plan. Doc. 41-1. Bowers's other child, Nasir Taylor, and her fiancé, Nicholas Zaharopoulos, filed competing claims for the death benefits. *See* Doc. 6 at 17-18. Taylor and Zaharopoulos have filed cross motions for summary judgment. Docs. 34; 31. Because Zaharopoulos is not Bowers's "domestic partner," as defined by the Plan, he is not entitled to Plan benefits. Accordingly, Zaharopoulos's motion (Doc. 34) is **DENIED** and Taylor's motion (Doc. 31) is **GRANTED**.

## I. BACKGROUND

Dominque Bowers began working for Northrop Grumman in March 2021. Docs. 31-2 ¶ 1; 38-1 ¶ 1. Bowers signed up for life insurance and accidental death and dismemberment benefits provided by Northop Grumman's Employee Benefit Plan, which is administered by Metropolitan Life Insurance Company ("MetLife"). Docs. 31-2

¶ 2; 36-1 ¶ 21; 37-1 ¶ 21; 38-1 ¶ 2.  Bowers did not name a beneficiary for the death benefits.  Docs. 31-2 ¶ 2; 38-1 ¶ 2.

On August 13, 2021, Bowers was shot and killed, allegedly by her minor son, J.C.  Docs. 1 ¶ 37; 6 ¶ 14; 27 ¶ 14; 16-1 at 389; 31-2 ¶ 5; 38-1 ¶ 5.  Bowers was survived by her two children, J.C. and Taylor.  Docs. 36-1 ¶ 35; 37-1 ¶ 35.  At the time of her death, Bowers was engaged to Zaharopoulos.  Docs. 36-1 ¶¶ 2, 15; 37-1 ¶¶ 2, 15.  Because Bowers did not name a beneficiary, the Plan provides an order of preference for payment—"spouse or domestic partner" is first in line, followed by children if there is no spouse or domestic partner.  Docs. 16-1 at 86; 31-2 ¶¶ 2, 6; 38-1 ¶ 2, 6.  The Plan defines a domestic partnership as follows:

> **Domestic Partner** means each of two people, one of whom is an Employee of the Policyholder, who:
>
> - have registered as each other's domestic partner, civil union partner or reciprocal beneficiary with a government agency where such registration is available; or
>
> - are of the same or opposite sex and have a mutually dependent relationship so that each has an insurable interest in the life of the other. Each person must be:
>
>   1. 18 years of age or older;
>   2. unmarried;
>   3. the sole domestic partner of the other person and have been so for the immediately preceding 6 months;
>   4. sharing a primary residence with the other person and have been so for the immediately preceding 6 months; and
>   5. not related to the other in a manner that would bar their marriage in the jurisdiction in which they reside.
>
> A Domestic Partner declaration attesting to the relationship between the employee and the employee's domestic partner must be completed and Signed by the Employee. The declaration must establish that each person has either a substantial interest in the other engendered by love and affection; or a lawful and substantial economic interest in the continued life, health or bodily safety of each other, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the other person.

Doc. 16-1 at 45; *see also* Docs. 36-1 ¶ 30; 37-1 ¶ 30.

On October 13, 2021, Zaharopoulos filed a claim for the death benefits as Bowers's "domestic partner."  Docs. 31-2 ¶ 7; 36-1 ¶ 34; 37-1 ¶ 34; 38-1 ¶ 7.  In response, MetLife requested a signed and completed domestic partner declaration,

"which would have been completed during benefits enrollment." Doc. 16-1 at 443. Zaharopoulos then signed and submitted a domestic partner declaration. Docs. 16-1 at 445-46; 36-1 ¶ 38; 37-1 ¶ 38. There is no evidence that Bowers, or anyone else, completed a domestic partner declaration before Bowers's death. Doc. 16-1 at 384, 505, 778.

On November 29, 2021, Bowers's aunt, La Toi Tamura Bowers-Scott, filed a competing claim for the death benefits on behalf of Taylor, who was then a minor.[1] Docs. 6 ¶ 22; 16-1 at 448; 31-2 ¶ 8; 36-1 ¶¶ 40-41; 37-1 ¶¶ 40-41; 38-1 ¶ 8. MetLife initially denied Taylor's claim because it determined that Zaharopoulos, as Bowers's alleged domestic partner, was entitled to the death benefits. Docs. 31-2 ¶ 9; 38-1 ¶ 9. Taylor appealed MetLife's decision, arguing that Zaharopoulos was not Bowers's domestic partner because (1) Bowers never completed and signed a domestic partner declaration, (2) Zaharopoulos was not in a committed relationship living with Bowers for at least six months, and (3) Bowers and Zaharopoulos never registered their relationship as a domestic partnership with a government agency. Docs. 16-1 at 496-500; 31-2 ¶ 10; 38-1 ¶ 10.

In response to Taylor's appeal, MetLife reversed its prior determination that Zaharopoulos was entitled to the death benefits. Docs. 36-1 ¶ 44; 37-1 ¶ 44. Taylor received a letter from MetLife stating that MetLife "decided to reverse [its] decision," and after Zaharopoulos's appeal period expired, MetLife would "resume the handling of this claim." Doc. 16-1 at 615. MetLife also informed Zaharopoulos that it was denying his claim because Houston County, Georgia, does not recognize domestic partnerships.

---

[1] On May 26, 2022, after turning eighteen, Taylor filed a claim for the death benefits. Docs. 6 ¶ 33; 20 ¶ 33; 16-1 at 781-86.

Docs. 16-1 at 613; 36-1 ¶ 45; 37-1 ¶ 45.  The denial letter did not address whether Zaharopoulos was required to submit a domestic partnership declaration signed by Bowers or whether Zaharopoulos provided sufficient evidence that he was in a committed relationship living with Bowers for at least six months.  Doc. 16-1 at 612-14.

On May 3, 2022, Zaharopoulos appealed the denial.  Docs. 16-1 at 618-20; 36-1 ¶ 47; 37-1 ¶ 47.  MetLife affirmed its decision, stating that because Zaharopoulos and Bowers "were not in a recognized Domestic Partnership in the State of Georgia, [Zaharopoulos] would not be an eligible Domestic Partner, as defined in the Plan."  Docs. 16-1 at 775; 36-1 ¶ 50; 37-1 ¶ 50.

Before MetLife could rule on Taylor's claim, Zaharopoulos filed this action against MetLife in its capacity as claims administrator.  Doc. 1.  MetLife answered and filed a counterclaim and complaint in interpleader naming J.C., Taylor, and Zaharopoulos as interpleader defendants.  Doc. 6.  "Due to uncertain issues of fact and law, and the adverse and conflicting claims of Zaharopoulos and Taylor," MetLife requested that the Court determine who should receive the death benefits.  *Id*. ¶ 35.  Specifically, MetLife requested that the Court determine whether Zaharopoulos or Bowers's surviving children should receive the death benefits, and if the benefits are payable to Bowers's surviving children, whether J.C. would be disqualified from receiving the benefits under Georgia's slayer statute.  *Id*. ¶¶ 36-39.

The Court granted MetLife's request to deposit the disputed funds into the Registry of the Court and dismissed MetLife as a party to the lawsuit.  Doc. 13.  After the Court appointed a guardian to represent J.C., J.C. renounced any claim or right to the death benefits.  Docs. 22; 41-1.

## II. STANDARD

### A. Cross Motions for Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp.*, 281 F.3d at 1224.  The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

"If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment."  *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (citing *Four Parcels of Real Prop.*, 941 F.2d at 1438).  The moving party must carry its burden by presenting "credible evidence" affirmatively showing that, "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party."  *Four Parcels of Real Prop.*, 941 F.2d at 1438.  In

other words, the moving party's evidence must be so credible that, if not controverted at trial, the party would be entitled to a directed verdict.  *Id*.

"If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original).  However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*  Thus, the Court "can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986)).

In contrast, "[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)).  The moving party "simply may show ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (cleaned up).  "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." *Info. Sys. & Networks Corp.*, 281 F.3d at 1224-25 (citing *Cartrett.*, 477 U.S. at 324).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotation marks and citation omitted). The Court will consider each motion on its own merits, and will view the facts "in the light most favorable to the non-moving party on each motion." *Am. Bankers Ins. Grp.*, 408 F.3d at 1331; *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012).

**B. ERISA Analytical Framework**

The parties agree ERISA governs the Court's analysis. Docs. 31-1 at 2; 34-1 at 6. ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008) (citing 29 U.S.C. § 1132(a)(1)(B)). ERISA itself does not provide a standard for courts reviewing benefits decisions made by plan administrators or fiduciaries. *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989)). Based on guidance from the Supreme Court in *Glenn* and *Firestone*, the Eleventh Circuit "established a multi-step framework to guide courts in reviewing an ERISA plan administrator's benefits decisions." *Id*. The steps are:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id*. at 1355. The parties agree that de novo review of the administrative claim decision is appropriate. Docs. 34-1 at 10-11; 37 at 1.

### III. DISCUSSION

The first step of the *Blankenship* framework requires the Court to determine whether MetLife's denial of Zaharopoulos's claim was "wrong"; that is, the Court must decide whether it agrees with the Plan administrator's decision. 644 F.3d at 1355. In making this determination, the Court does not give any deference to MetLife's decision and, instead, "stand[s] in the shoes of the administrator and start[s] from scratch, examining all the evidence before the administrator as if the issue had not been decided previously." *Bates v. Metro. Life Ins. Co.*, 2009 WL 2355834, at *10 (M.D. Ga. July 27, 2009) (citation omitted). The Court must limit its review of the evidence to the same record that was before the plan administrator at the time benefits were denied. *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1247 (11th Cir. 2008) (citing *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989)). "Because

-8-

the court analyzes [the claim] as if it were the administrator in the first instance, what the actual administrator said in justifying its decision is irrelevant to this step one analysis." *Hill v. Emp. Benefits Admin. Comm. of Mueller Grp. LLC*, 971 F.3d 1321, 1326-27 (11th Cir. 2020).

MetLife's decision to deny Zaharopoulos's claim was correct. Bowers did not sign and submit a domestic partner declaration and, thus, Zaharopoulos is not a domestic partner as defined in the Plan. Because MetLife's decision to deny Zaharopoulos's claim to the death benefits was correct, there is no need to address the remaining steps in the *Blankenship* framework.

The Plan allows two methods for proving a domestic partnership. Doc. 16-1 at 45. The Employee can either (1) register the domestic partnership with a government agency or (2) demonstrate a "mutually dependent relationship so that each has an insurable interest in the life of the other." *Id*. The second option requires that the Employee submit a domestic partner declaration "attesting to the relationship between the employee and the employee's domestic partner." *Id*. This declaration "must be completed and Signed by the Employee." *Id*. Zaharopoulos contends that he and Bowers were domestic partners under the second—mutually dependent relationship—method. Doc. 34-1 at 12-15, 19-24. And Zaharopoulos acknowledges that this option "requires the execution of a 'Domestic Partner declaration.'" *Id*. at 13.

Nevertheless, Zaharopoulos contends that the absence of a domestic partner declaration signed by Bowers does not defeat his claim for two reasons. Doc. 38 at 5-8. First, "as a threshold matter," Zaharopoulos argues that Taylor is precluded from raising the missing declaration because Taylor "failed to appeal MetLife's rejection of this

argument[] during the ERISA administrative process." *Id*. at 6.  Thus, according to Zaharopoulos, Taylor has not exhausted his administrative remedies.  *Id*.  Second, Zaharopoulos argues that the declaration he—but not Bowers—signed and submitted complies with the Plan's requirements.  *Id*. at 7-8.

Zaharopoulos's first argument ignores the administrative record.  Generally, a plaintiff is required to appeal a denial of benefits to the plan administrator before bringing a claim in federal court.  *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006).  Here, Taylor did appeal MetLife's initial denial of benefits and specifically argued that Zaharopoulos was not Bowers's domestic partner because Bowers had not completed a domestic partner declaration.  Docs. 16-1 at 496-500 ("[T]he claim file shows quite clearly that no Domestic Partnership Declaration … was ever provided to Northrop Grumman by the Insured."); 31-2 ¶ 10; 38-1 ¶ 10.  In response, Taylor received a letter from MetLife stating only that MetLife "received [Taylor's] appeal," "re-evaluated the claim," and "decided to reverse [its] decision."  Doc. 16-1 at 615.  MetLife did not explain the reasoning behind its decision or "reject" any of the arguments Taylor raised in his appeal.  *Id*.  Thus, Zaharopoulos's contention that Taylor did not exhaust his administrative remedies because Taylor failed to raise the missing declaration during the administrative claims process is incorrect.[2]  Doc. 38 at 6.

To the extent that Zaharopoulos is also arguing that Taylor is precluded from raising the missing domestic partner declaration because MetLife failed to note the missing declaration in its denial letter, that argument also fails.  While a plan administrator may be precluded from raising an argument not previously asserted in a

---

[2] Furthermore, Zaharopoulos fails to explain why Taylor was required to appeal a *favorable* decision—likely because any explanation is illogical.

denial of benefits letter, MetLife's purported waiver could not prohibit Taylor from raising the issue before this Court.  See *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1348 (11th Cir. 1994); *Martinez-Claib, M.D. v. Bus. Men's Assur. Co. of Am.*, 349 F. App'x 522, 524 (11th Cir. 2009).  To hold otherwise would contradict the purpose of de novo review—which requires the Court to evaluate the claims administrator's *outcome* not the administrator's *rationale*.  As the Eleventh Circuit made clear in *Hill*, "what the actual administrator said in justifying its decision is irrelevant to this step one analysis." 971 F.3d at 1326-27.  Thus, MetLife's failure to thoroughly outline its rationale for denying Zaharopoulos's claim is immaterial.[3]

Second, Zaharopoulos argues that his signature on the declaration is sufficient to establish that he was Bowers's domestic partner because he is also an employee of Northrop Grumman.  Doc. 38 at 7-8.  The Plan states that "[a] Domestic Partner declaration attesting to the relationship between the employee and the employee's domestic partner must be completed and *Signed by the Employee*."  Doc. 16-1 at 45 (emphasis added).  Zaharopoulos argues he happens to be "an employee" and, thus, his signature on the domestic partner declaration was sufficient.  Doc. 38 at 7-8.  That argument ignores the plain text and clear intent of the Plan.  Clearly, "the Employee" is Bowers and just as clearly, the Plan's insistence on a declaration from Bowers is intended to confirm *her* agreement that her partner has an insurable interest in her life.

---

[3] In any event, MetLife's rationale is implicit in the denial letters.  Doc. 16-1 at 612-14, 774-75.  Because Bowers did not submit a signed domestic partner declaration the only available method to establish a domestic partnership was through government registration.  Doc. 16-1 at 45.  And because Houston County, where Bowers and Zaharopoulos were living at the time of Bowers's death, does not recognize domestic partnerships, Zaharopoulos could not be Bowers's domestic partner under the first—government registration—method.  Docs. 36-1 ¶ 18; 37-1 ¶ 18.  Thus, without a signed declaration or government registration, Zaharopoulos could not be Bowers's domestic partner under the terms of the Plan.

A "certificate of insurance" is issued with each insurance Plan and includes a space to affix a sticker identifying "THE EMPLOYEE'S NAME AND EFFECTIVE DATE." Doc. 16-1 at 5.  The person identified on that sticker is "the Employee."  *Id*.; *see also* Doc. 35-3 at 27 ("Employee is defined in the Certificate as listed in Exhibit 2 which applies to the Employee.").  While the certificate produced by MetLife does not include the sticker identifying Bowers as "the Employee," Zaharopoulos does not contest that the certificate was issued to Bowers.  *See* Docs. 1-4; 35-3 at 4, 37.  Accordingly, when the Plan refers to "the Employee" that individual is Bowers and, thus, Bowers was required to sign the domestic partner declaration.  As Taylor highlights, accepting Zaharopoulos's interpretation that "the Employee" refers to *any* Northrop Grumman employee would allow any employee to "step in and make benefit elections, modifications to beneficiary designations, or other changes on behalf of any other employee without the actual covered employee's knowledge or consent."  Doc. 39 at 4.  Therefore, the fact that Zaharopoulos also happens to be a Northrop Grumman employee is irrelevant.  Even more to the point, the clear purpose of the declaration requirement is to confirm that Bowers wanted Zaharopoulos to have an insurable interest in her life.  Zaharopoulos cannot grant to himself that insurable interest after Bowers's death.

In sum, Bowers was required to sign and submit the domestic partner declaration.  Without that declaration Zaharopoulos was not Bowers's domestic partner as defined by the Plan.  As a result, Taylor is entitled to the death benefits.

-13-

## IV. CONCLUSION

Because Zaharopoulos was not Bowers's domestic partner, MetLife's decision to deny Zaharopoulos's claim was correct.  Accordingly, Zaharopoulos's motion for summary judgment (Doc. 34) is **DENIED** and Taylor's motion for summary judgment (Doc. 31) is **GRANTED**.  Furthermore, the clerk is **DIRECTED** to administratively terminate J.C. as a party in this case.

**SO ORDERED**, this 6th day of September, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT